DATE: _11-22-14_ , _____ (time)   MLS # _3225318_
SELLING OFFICE: _Premier Choice Realty_   REALTOR® PHONE: _734 961 6600_   FAX: _734 961 6601_
LISTING OFFICE: Craig Dunlap RE LLC   REALTOR® PHONE: 616-285-8520   FAX: 616-825-5910

1. **Agency Disclosure:** The Undersigned Buyer and Seller each acknowledge that they have read and signed the Disclosure Regarding Real Estate Agency Relationships. The selling licensee is acting as (check one):
   ☐ Agent/Subagent of the Seller  ☒ Buyer's Agent  ☐ Dual Agent (with written, informed consent of both Buyer and Seller)
   ☐ Transaction Coordinator

2. **Seller's Disclosure Statement:** (This paragraph applies to sales of one-to-four family residential units.)
   ☒ Buyer has received Seller's Disclosure Statement dated __Waived-_____, subject to Seller's certification in Paragraph 29.
   ☐ Buyer has not received Seller's Disclosure Statement, and Buyer's obligations under this Contract are subject to Buyer's receipt of Seller's Disclosure Statement and acceptance of Seller's Disclosure Statement within 72 hours after receipt in the case of personal delivery or 120 hours in the case of delivery by mail. Exceptions: _____

3. **Lead-Based Paint Addendum:** Transactions involving homes built prior to 1978 require a written disclosure which is hereby attached and will be an integral part of this Agreement.

4. **Property Description:** Buyer hereby offers to buy the property located in the  ☒ City  ☐ Village  ☒ Township of
   _Augusta_ , _Washtenaw_ County, Michigan, commonly known as
   _5832 Rustic Lane  48197_ St./Ave., with the following legal or tax description:
   PP# _T-20-06-180-011_ _____

   The following paragraph applies only if the Premises include unplatted land:
   Seller agrees to grant Buyer at closing the right to make (insert number) _All_ divisions(s) under Section 108(2), (3), and (4) of the Michigan Land Division Act. (If no number is inserted, the right to make divisions under the sections referenced above stays with any remainder of the parent parcel retained by Seller. If a number is inserted, Seller retains all available divisions in excess of the number stated; however, Seller and/or REALTOR® do not warrant that the number of divisions stated is actually available.) If this sale will create a new division, Seller's obligations under this Agreement are contingent on Seller's receipt of municipal approval on or before _____, of the proposed division to create the Premises.

5. **Price:** Buyer offers to buy the property for the sum of $ _141,900_
   _One hundred forty one thousand nine hundred_ _____ U.S. Dollars

6. **Terms:** The Terms of Purchase will be as indicated by "X" below: (Other unmarked terms of purchase do not apply.)
   SOURCE OF FUNDS TO CLOSE: Buyer represents that the funds necessary to close this transaction on the terms specified below are currently available to Buyer in cash or an equally liquid equivalent.
   ☒ CASH The full purchase price upon execution and delivery of Warranty Deed. Buyer Agrees to provide Buyer Agent/Dual Agent verification of funds within five (5) days of the date this Agreement is fully executed, and consents to the disclosure of such information to Seller and/or Seller's Agent.
   ☒ NEW MORTGAGE The full purchase price upon execution and delivery of Warranty Deed, contingent upon Buyer's ability to obtain a _Conv._ type _30 yr_ (year) mortgage in the amount of _80_ % of the sale price bearing interest at a rate not to exceed _5_ % per annum (rate at time of loan application), on or before the date the sale is to be closed. Buyer agrees to apply for a mortgage loan, and pay all fees and costs customarily charged by Buyer's lender to process the application, within _5*_ days after this Agreement is fully executed, not to impair the Buyers' credit after the date hereof, and to accept such loan if offered. Should any part of the new mortgage be FHA/VA insured,  ☒ Seller  ☐ Buyer will agree to pay an amount not to exceed $ _-0-_ , representing repairs required as a condition of financing. Buyer  ☒ agrees  ☐ does not agree to authorize Buyer's Agent/Dual Agent to obtain information from Buyer's lender regarding Buyer's financing, and consents to the disclosure of this information to Seller and/or Seller's Agent. Exceptions: _Buyer will attach approval letter with this offer_
   ☐ SELLER FINANCING (check one of the following):  ☐ CONTRACT  or  ☐ PURCHASE MONEY MORTGAGE
   In the case of seller financing, Buyer agrees to provide Seller with a credit report within 72 hours of Seller's acceptance of this offer. If the credit report is unacceptable to the Seller, the Seller shall have the right to terminate this offer within 48 hours of Seller's receipt, or if Buyer fails to provide said credit report to Seller within the time frame allotted, the Seller shall have the right to terminate this offer within 48 hours. Seller is advised to seek professional advice regarding the credit report.

©Copyright, District 2 & 3 Boards of REALTORS®
Revision Date 12/08

_____ Buyer's Initials   _____ Seller's Initials

$ _n/a_____ upon execution and delivery of a _n/a_____
form (name or type of form and revision date), a copy of which is attached, wherein the balance of $_____
will be payable in monthly installments of $_____ or more including interest at _____%
per annum, interest to start on date of closing, and first payment to become due thirty (30) days after date of closing. The entire
unpaid balance will become due and payable _____ months after closing. Exceptions:

☐ EQUITY (check one of the following):   ☐ Formal Assumption   or   ☐ Informal Assumption
Upon execution and delivery of: ☐ Warranty Deed subject to existing mortgage   OR   ☐ Assignment of Vendee Interest in Land
Contract, Buyer to pay the difference (approximately $ _n/a_____) between the purchase price above provided and the
unpaid balance (approximately $ _n/a_____) upon said mortgage or land contract, which Buyer agrees to assume and
pay. Buyer agrees to reimburse Seller for accumulated funds held in escrow, if any, for payment of future taxes and insurance
premiums, etc. Exceptions:

7. **Contingencies:** The Buyer's obligation to consummate this transaction (check one):
☒ **IS NOT CONTINGENT** - is not contingent upon the sale or exchange of any other property by Buyer.
☐ **IS CONTINGENT UPON CLOSING** - is contingent upon closing of a sale or exchange of Buyer's property located at:
_____ on or before _____.
A copy of Buyer's agreement to sell or exchange that property is being delivered to Seller along with this offer.
☐ **IS CONTINGENT UPON THE SALE AND CLOSING** - is contingent upon the execution of a binding agreement and the closing of a
sale or exchange of Buyer's property located at _____ on or
before _____. Seller will have the right to continue to market Seller's property until Buyer enters
into a binding agreement to sell or exchange Buyer's property and delivers a copy thereof to Seller. During such marketing period,
Seller may enter into a binding contract for sale to another purchaser on such price and terms as the Seller deems appropriate, and in
such event this Agreement will automatically terminate and Buyer's deposit will be refunded. Exceptions:

8. **Fixtures and Improvements:** All improvements and appurtenances are included in the purchase price including, if now in or on the property, the following: all buildings; landscaping; lighting fixtures and their shades and bulbs; ceiling fans; hardware for draperies and curtains; window shades and blinds; built-in kitchen appliances, including garbage disposal and drop-in ranges; wall to wall carpeting, if attached; all attached mirrors; all attached shelving; attached work benches; stationary laundry tubs; water softener (unless rented); water heater; incinerator; sump pump; water pump and pressure tank; heating and air conditioning equipment (window units excluded); attached humidifiers; heating units, including add-on heating stoves and heating stoves connected by flue pipe; fireplace screens, inserts, and grates; fireplace doors, if attached; liquid heating and cooking fuel tanks if owned by Seller; TV antenna and complete rotor equipment; satellite dish and necessary accessories and complete rotor equipment; all support equipment for inground pools; screens and storm windows and doors; awnings; installed basketball backboard, pole and goal; mailbox; flagpole(s); fencing, invisible inground fencing and all related equipment, including collars; detached storage buildings; underground sprinkling, including the pump; installed outdoor grills; all plantings and bulbs; garage door opener and control(s); and any and all items and fixtures permanently affixed to the property; and also includes: _____

but does not include:
_any appliances or personal belongings of the debtor_____

9. **Heating and Cooking Fuels:** Liquid heating and cooking fuels in tanks are included in the sale and will transfer to Buyer at time of possession. Sellers are responsible for maintaining heating and cooking liquid fuels at an operational level and shall not permit fuels to fall below 10% in the tank(s) at the time of possession, except that the tank(s) may be empty only if now empty. Further, the seller is precluded from removing fuel from tank(s) other than what is expended through normal use. Exceptions:
n/a

10. **Assessments (choose one):**
☒ Seller will pay any existing assessments which are due and payable, or a lien or both, on the property on or before the date first written above.
☐ Buyer will assume or pay any assessment balance which remains after Seller pays for any assessment installments which are due and payable on or before the date first written above.

_5832 Kime Lne_____          _1/22/14_____          _____
Subject Property Address/Description       Date                 Time

©Copyright, District 2 & 3 Boards of REALTORS®
Revision Date 12/08
                                    [signature] Buyer's Initials    [signature] Seller's Initials

11. **Property Taxes:** Seller will be responsible for any taxes billed prior to those addressed below. Buyer will be responsible for all taxes billed after those addressed below.

    Buyer is also advised that the state equalized value of the property, principal residence exemption information and other real property tax information is available from the appropriate local assessor's office. Buyer should not assume that buyer's future tax bills on the property will be the same as the seller's present tax bills. Under Michigan law, real property tax obligations can change significantly when property is transferred.

    ☐ No proration.   (Choose one):
        ☐ Buyer ☐ Seller will pay taxes billed summer _____ (year);
        ☐ Buyer ☐ Seller will pay taxes billed winter _____ (year);

    ☒ Calendar Year Proration (all taxes billed or to be billed in the year of the closing). Calendar year tax levies will be estimated, if necessary, using the taxable value and the millage rate(s) in effect on the day of closing, broken down to a per diem tax payment and prorated to the date of closing with Seller paying for January 1 to day of closing.

    ☐ Fiscal Year Proration - Taxes will be prorated as though they are paid in (choose one):   ☐ advance.   ☐ arrears.
    Fiscal Year will be assumed to cover a 12 month period from date billed, and taxes will be prorated to the date of closing. Fiscal year tax levies will be estimated, if necessary, using the taxable value and millage rate(s) in effect on the day of closing, broken down to a per diem tax payment and prorated to the date of closing with Seller paying to day of closing.
    Exceptions:

12. **Well/Septic:** Within **ten (10) days** after this Agreement is fully executed, the Seller will arrange and pay for an inspection and written report by the county health department or a mutually agreed upon qualified inspector, if allowed by the health department, of the primary well used for human consumption (including a water test for coliform bacteria and nitrates) and septic systems (including tank pumping, if required) in use on the property. If the evaluation report(s) in any of the above circumstances disclose(s) a condition which the Buyer deems unacceptable or that doesn't meet county standards where the county requires minimum standards as a condition of sale, Buyer shall notify the Seller or Listing Broker in writing, within **five (5) days** after the date Buyer has received the applicable report(s), of such condition and request corrective action. If Seller does not agree or fails to respond within **fifteen (15) days** of Buyer's requested corrective action, Buyer shall have the right to terminate this Agreement by providing written notice to Seller and/or Listing Broker within **three (3) days** from receipt of Seller's written refusal (if any) or from the expiration of the aforementioned **fifteen (15) day** period, and Buyer's good-faith deposit will be refunded. Buyer agrees that the contingency provided by this paragraph shall be deemed to have been waived if (1) Buyer fails to provide written notice of a condition deemed unacceptable within **five (5) days** after Buyer has received the applicable report(s); or (2) Buyer fails to terminate this Agreement in writing as provided above. If these contingencies are waived or if Buyer elects to close this transaction, Buyer shall be deemed to have accepted the well and/or septic in its "as is" condition as of the date of closing. Exceptions:
    **See attached addendum**

13. **Inspections & Insurability:** By signing this Agreement, Buyer is representing that the Buyer has the right to inspect the buildings, premises, and building components and systems, or have the buildings, premises, and building components and systems inspected by experts selected by the Buyer.

    ☐ The Buyer has waived his/her right to inspections.

    ☒ The Buyer has elected to arrange and pay for any inspections including, but not limited to Plumbing; Heating, Ventilating & Air Conditioning; Electrical; Telephone (hard-wired landline); Structural, including roof; Termites and other wood destroying insects; Radon, Air Quality and/or Mold; Water Test for Lead and Nitrites (required if FHA or VA financing). Any damage, misuse, abuse, or neglect of any portion of the property or premises as a result of inspections will be Buyer's responsibility and expense.

    It is the Buyer's responsibility to investigate (i) whether the property complies with applicable codes and local ordinances and whether the property is zoned for Buyer's intended use; and (ii) whether the Buyer can obtain a homeowner's insurance policy for the property at price and terms acceptable to Buyer. In the event of VA financing, Seller will pay for the inspection for termites and other wood destroying insects. All inspections and investigations will be completed within **ten (10) days** after Seller's acceptance of Buyer's offer or Buyer's acceptance of any counteroffer, as the case may be. If the results of Buyer's inspections and investigations are not acceptable to Buyer, the Buyer may, within the above referenced period, by written notice to Seller, either terminate this Agreement and receive a refund of Buyer's good-faith deposit, or make a written proposal to Seller to correct unsatisfactory conditions that Buyer does not accept. If the Buyer fails to make a written proposal within the above referenced time period, then Buyer will be deemed to have accepted the results of the inspection reports and investigations without repairs or corrections and will proceed to closing according to the terms and conditions of this Agreement. Seller may negotiate with Buyer or, by written notice to Buyer, accept Buyer's proposal or terminate this Agreement. Failure of the Seller to respond or to arrive at a mutually agreeable resolution within **three (3) days** after Seller's receipt of Buyer's proposal shall result in a termination of this Agreement and a return of any applicable good-faith deposit.

    Buyer agrees that Buyer is not relying on any representation or statement made by Seller or any real estate salesperson (whether intentionally or negligently) regarding any aspect of the premises or this sale transaction, except as may be expressly set forth in this Agreement, a written amendment to this Agreement, or a disclosure statement separately signed by the Seller. Accordingly, if Buyer

5832 Rustic Ln                                      1-22-14
Subject Property Address/Description                Date                Time

©Copyright, District 2 & 3 Boards of REALTORS®
Revision Date 12/08

_____ Buyer's Initials       _____ Seller's Initials

chooses no inspections, fails to complete inspections, or submits no written proposals, Buyer agrees to accept the premises "as is" and "with all faults", except as otherwise expressly provided in the documents specified in the preceding sentence. Exceptions:
Buyer must order the home inspection immediately upon bankruptcy trustees acceptance.

14. **Municipal Compliances:** The Seller will arrange and pay for current certificates of occupancy, sidewalk compliance, and smoke detector ordinances, if applicable.

15. **Title Insurance:** Seller agrees to convey marketable title to the property subject to conditions, limitations, reservation of oil, gas and other mineral rights, existing zoning ordinances, and building and use restrictions and easements of record. A 1998 ALTA Owner's Policy of Title Insurance in the amount of the purchase price shall be ordered by Seller and furnished to Buyer at Seller's expense, and a commitment to issue a policy insuring marketable title vested in Buyer, including a real estate tax status report, will be made available to Buyer within seven (7) days after this Agreement is fully executed, if Buyer so chooses, or if the property is not an existing residential structure (one to four family) on a residential parcel or a condominium unit, then a 2006 ALTA Owners' Policy of Title Insurance shall be provided.

    If Buyer objects to any conditions, Buyer may, within three (3) days from the aforementioned seven (7) day period, by written notice to Seller, either terminate this Agreement and receive a refund of Buyer's good-faith deposit, or make a written proposal to Seller to correct unsatisfactory conditions that Buyer does not accept. If Buyer fails to make a written proposal within the above referenced time period, then Buyer will be deemed to have accepted the conditions and will proceed to closing according to the terms and conditions of this Agreement. Seller may negotiate with Buyer or, by written notice to Buyer, accept Buyer's proposal or terminate this Agreement. Failure of Seller to respond or to arrive at a mutually agreeable resolution within three (3) days after Seller's receipt of Buyer's proposal shall result in a termination of this Agreement and a return of any applicable good-faith deposit. Exceptions:
Title to the property will be transferred by the Trustee's execution of a Trustee's deed. Buyer will purchase normal Title insurance

16. **Property Survey:** Broker advises that Buyer should have a survey performed to satisfy Buyer as to the boundaries of the property and the location of improvements thereon. The Buyer has elected to obtain:
    ☐ A boundary survey certified to Buyer with iron corner stakes and with improvements and easements located on a map of survey.
    ☐ A surveyor's report or sketch (not a boundary survey) re-certified to Buyer showing the approximate location of improvements.
    ☒ No survey.
    Survey to be paid for by: ☐ Buyer  ☐ Seller
    When closing occurs, Buyer shall be deemed to have accepted the boundaries of the property and the location of such improvements thereon.
    Exceptions:
No Survey available

17. **Home Protection Plan:** Buyer and Seller have been informed that home protection plans may be available. Such plans may provide additional protection and benefit to the parties. Exceptions:
Buyer may elect to purchase a home protection plan at their expense

18. **Prorations:** Rent; association dues/fees, if any; insurance, if assigned; interest on any existing land contract, mortgage or lien assumed by Buyer; will all be adjusted to the date of closing.

19. **Possession:** Seller will maintain the property in its present condition until the completion of the closing of the sale. Possession to be delivered to buyer, subject to rights of present tenants, if any:
    ☒ At the completion of the closing of the sale.
    ☐ At _____ ☐ a.m. ☐ p.m. on the _____ day after completion of the closing of the sale, during which time Seller will have the privilege to occupy the property and hereby agrees to pay the Buyer $_____ as an occupancy fee for this period payable at closing, WITHOUT PRORATION. If Seller fails to deliver possession to Buyer on the agreed date, Seller shall become a tenant at sufferance and shall pay to Buyer as liquidated damages $_____ per day plus all of the Buyer's actual reasonable attorneys fees incurred in removing the Seller from the property.
    If Seller occupies the property after closing, Seller will pay all utilities during such occupancy. Buyer will maintain the structure and mechanical systems at the property. However, any repairs or replacements necessitated by Seller's misuse, abuse, or neglect of any portion of the property will be Seller's responsibility and expense.
    On the agreed delivery date, Seller shall deliver the property free of trash and debris and in broom-clean condition, shall remove all personal property (unless otherwise stated in this or an additional written agreement), shall make arrangements for final payment on all utilities, and shall deliver all keys to Buyer. Exceptions:
see addendum attached

_5832 Risric Ln_ / _11.27.14_ / _____

Subject Property Address/Description / Date / Time

Buyer's Initials / Seller's Initials

©Copyright, District 2 & 3 Boards of REALTORS®
Revision Date 12/08

20. **Closing:** If agreeable to both parties, the sale will be closed as soon as closing documents are ready, but not later than **6 Months from now**. An additional period of fifteen (15) days will be allowed for closing to accommodate the correction of title defects or survey problems which can be readily corrected, delays in obtaining any lender required inspections/repairs. During this additional period, the closing will be held within 5 days after all parties have been notified that all necessary documents have been prepared. Buyer and Seller will each pay their share of any title company closing fee, if applicable, except in the case of VA financing where the Seller will pay the entire closing fee. Exceptions: _____

21. **Good-Faith Deposit:** For valuable consideration, Buyer gives REALTOR® above named until **Noon** (time) on **11-26-14**, to obtain the written acceptance of this offer and agrees that this offer, when accepted by Seller, will constitute a binding agreement between Buyer and Seller and herewith deposits $ **1,000.00 Per Check** evidencing Buyer's good faith, to be held by selling Broker or selling Broker's designee, and to apply on the purchase price. If this offer is not accepted or if the sale is not closed due to a failure to satisfy a contingency for a reason other than the fault of Buyer, the good-faith deposit shall be refunded to Buyer. If the sale is not closed as provided in this Agreement, the Broker holding the deposit will notify Buyer and Seller, in writing, of Broker's intended disposition of the deposit. If the parties do not object to such disposition in writing within fifteen (15) days after the date of Broker's notice, they will be deemed to have agreed to Broker's proposed disposition; if a party objects and no mutually agreeable disposition can be negotiated, Broker may deposit the funds by interpleader with a court of proper jurisdiction or await further actions by the parties. In the event of litigation involving the deposit, in whole or in part, either the Seller or the Buyer that is not the prevailing party, as determined by the court, will reimburse the other for reasonable attorneys' fees and expenses incurred in connection with the litigation, and will reimburse the Broker for any reasonable attorneys' fees and expenses incurred in connection with any interpleader action instituted.

22. **Professional Advice:** Broker hereby advises Buyer and Seller to seek legal, tax, environmental and other appropriate professional advice relating to this transaction. Broker does not make any representations or warranties with respect to the advisability of, or the legal effect of this transaction. Buyer further acknowledges that REALTOR® above named in the Agreement hereby recommends to Buyer that an attorney be retained by Buyer to pass upon the marketability of the title and to ascertain that the required details of the sale are adhered to before the transaction is consummated. Buyer agrees that Buyer is not relying on any representation or statement made by Seller or any real estate salesperson (whether intentionally or negligently) regarding any aspect of the property or this sale transaction, except as may be expressly set forth in this Agreement, a written amendment to this Agreement, or a disclosure statement separately signed by the Seller.

23. **Disclosure of Information:** Buyer and Seller acknowledge and agree that the price, terms, and other details with respect to this transaction (when closed) are not confidential, will be disclosed to REALTORS® who participate in the applicable Multiple Listing Service, and may otherwise be used and/or published by that Multiple Listing Service in the ordinary course of its business.

24. **Other Provisions:**

    1) Sale of the Real Property is subject to the approval of the US Bankruptcy Court for the Eastern District of Michigan. 2) Seller makes no warranties or representations regarding the property. Property is being sold "as is, where is" without representation or warranty, express or implied of any kind, nature or description including, without limitation, warranties of title, any warranty of merchantability, habitability, usability or fitness for any particular purpose.

25. **Mergers and Integrations:** This Agreement is the final expression of the complete agreement of the parties and there are no oral agreements existing between the parties relating to this transaction. This Agreement may be amended only in writing signed by the parties and attached to this Agreement.

26. **Fax or Electronic Distribution.** The parties agree that any signed copy of this Agreement transmitted by facsimile or other electronic means shall be competent evidence of its contents to the same effect as an original signed copy.

27. **Buyer's Acknowledgment.** Buyer hereby acknowledges receipt of a copy of this Agreement.

Witness _____  Phone **734 961 6600**  X **Sarah Prince** Buyer

Print Witness Name **Dennis Cerlo**    **Sarah Prince**
                                       Print name as you want it to appear on documents.

Buyer's Address **2716 Bellwood Ave.**
**Ann Arbor, MI 48104**    X _____ Buyer

Buyer's Phone: (Res.) _____ (Bus.) _____
                                       Print name as you want it to appear on documents.

**5832 Rustic Lane**    **11-22-14**
Subject Property Address/Description    Date    Time

[ Buyer's Initials ]    [ Seller's Initials ]

©Copyright, District 2 & 3 Boards of REALTORS®
Revision Date 12/08

28. **Seller's Acceptance:** The Above Offer is Hereby Accepted: ☐ As written. ☐ As written except:

Counteroffer, if any, expires _____, at _____ (time). Seller has the right to withdraw this counter offer and to accept other offers until Seller or Seller's Agent has received notice of Buyer's acceptance.

29. **Certification of Previous Disclosure Statement:** Seller certifies to Buyer that the property is currently in the same condition as Seller previously disclosed in Seller's Disclosure Statement dated: **Seller exempt attached**. Seller agrees to inform the Buyer in writing of any changes in the content of the disclosure statement prior to closing.

30. **Notice to Seller:** Seller understands that consummation of the sale or transfer of the property described in this Agreement will not relieve the Seller of any liability that Seller may have under the mortgages to which the property is subject, unless otherwise agreed to by the lender or required by law or regulation.

31. **Seller's Acknowledgment:** Seller has read this Agreement and acknowledges receipt of a copy.

Witness _____ Phone _____ X _/s/_____ Seller

Print Witness Name _____ Print name as you want it to appear on documents.

Seller's Address _____

X _____ Seller

Seller's Phone: (Res.) _____ (Bus.) _____ Print name as you want it to appear on documents.

DATE: 2·1·14  6:30 PM (time)

32. **Buyer's Receipt/Acceptance:** Receipt is hereby acknowledged by Buyer of Seller's acceptance of Buyer's offer. In the event the acceptance was subject to certain changes from Buyer's offer, Buyer agrees to accept said changes, all other terms and conditions remaining unchanged.

X _/s/ Sarah Prince_ Buyer

Witness _/s/_ Phone _____ X _____ Buyer

DATE: _____ (time)

33. **Seller's Receipt:** Seller acknowledges receipt of Buyer's acceptance of counter offer.

X _____ Seller

Witness _____ Phone _____ X _____ Seller

5832 Russ Ln
Subject Property Address/Description     Date     Time

©Copyright, District 2 & 3 Boards of REALTORS®
Revision Date 12/08

# WEST MICHIGAN REGIONAL
## ADDENDUM TO PURCHASE AGREEMENT

MLS # 3225318   Date: 11-22-14   _____ (time)

Selling Office Premier Choice Realty REALTOR® Phone 734-961-6601 Fax 734-961-6601

Listing Office Dunlap Real Estate RE LLC, REALTOR® Phone 616-285-8520 Fax 616-825-5910

1. Addendum # 1 to Purchase Agreement dated 11-27-14 covering property at 5832 Reine Lane Ypsilanti MI 48197

2. This Addendum shall be an integral part of the Purchase Agreement, which is amended as follows:

    1) Inspections to be completed within 10 days upon receipt of Trustees acceptance.
    2) Bankruptcy Trustee will transfer a trustees deed at closing. Buyer will purchase normal title insurance with standard exceptions. 3) The Trustee's acceptance of this offer is subject to both Bankruptcy Court approval and bank approval of a short sale which includes a "carve-out" in the higher amount of $6,000 or 3% of the gross sales price to be paid by buyer on top of the sale price. 4) Buyer has received, signed, a copy of the GRAR form entitled "Foreclosure and Short Sale Disclosure"
    5) Buyer holds Trustee, selling broker and Dunlap and Associates harmless in regards to all bank, short sale, foreclosure, matters.
    6) Sale will not close until after an order is entered by the Bankruptcy Court approving the Trustee's motion to sell Real Property.
    7) Sale price includes no appliances 8) No survey to be provided.
    9) Every effort will be made to assure that the debtor is out of the home before closing but buyer may be required to evict the debtor.
    10) In most cases the sheriff sale has already occurred. Possession by the buyer could be as long as 6 months after sheriff sale if home is occupied by debtor. 11) If property is already vacant then possession can be at closing.
    12) If there is a well and septic system on the property then the buyer will be responsible to pay for any inspections that are required.
    13) Any assessments, including water assessments are assumed by the buyer.
    14) Home sold in "as is" condition"
    15) Buyer to pay 150.00 re/key-Winterization fee at time of trustee acceptance of offer. 16) Closing cannot happen until the sheriff sale has taken place and has been recorded.
    **subject to higher and better offers**

3. The ☐ Seller ☒ Buyer (check one) gives the above-named REALTOR® ___4___ days to obtain the written acceptance of this Addendum to the Purchase Agreement. If accepted, this Addendum will constitute a binding change to the Purchase Agreement.

4. RECEIPT IS ACKNOWLEDGED BY BUYER of a copy of this Agreement

    Date 11-22-14   X _____ Buyer
    Witness _____   X _____ Buyer

5. RECEIPT IS ACKNOWLEDGED BY SELLER of a copy of this Agreement.

    Date _____   X _____ Seller
    Witness _____   X _____ Seller

©West Michigan REALTOR® Boards, 2005
Form #23  Rev. Date 1/2002

# ADDENDUM

## ANN ARBOR AREA BOARD OF REALTORS®



WITH REFERENCE TO A CERTAIN SALES CONTRACT dated  _11-22-14_  between _Bankruptcy Trustee_ (Seller) and _Sarah Prince_ (Purchaser) for the property commonly known as _5832 Rustic Lane_

SALES CONTRACT IS AMENDED/SUPPLEMENTED AS FOLLOWS:

_Sales Price is changed to $160,000_

Witness: _____

Purchaser: _Sarah Prince_  1/21/15

Seller: _[signature]_  1/21/15
_Trustee of [Brown?]_

PURCHASER'S RECEIPT: The undersigned Purchaser acknowledges receipt of the Seller's signed acceptance of this Addendum.

(DATE)

Use of this form is not authorized by the Ann Arbor Area Board of REALTORS® if standard form language is modified.
Revised 12/97

relationships that work
# green tree®

Green Tree Servicing LLC
P.O. Box 6172
Rapid City, SD 57709-6172

February 03, 2015

SUSAN G BROWN

3150 PACKARD RD
YPSILANTI, MI 48197

Re: Our Account Number: 82437787
    Property Address:    5832 RUSTIC LN
                                   YPSILANTI, MI 48197
    Settlement in Full

Dear SUSAN G BROWN  :

The current payoff on your above-referenced account is **$189,020.74**.[1] Please be advised that Green Tree Servicing LLC[2] ("Green Tree") has approved the proposed short payoff subject to the following conditions:

1. Approval is contingent upon Green Tree receiving proof of escrow/settlement being opened.
2. Close of escrow is to be on or before **2/11/2015**.
3. Gross contract sales price is **$160,000.00**.
4. Green Tree will accept and consider payment in the amount of **$138,220.43** on the account as a settlement in full.
5. Maximum net sales proceeds to the 2nd lien of **$6,000.00**.
6. Maximum commissions to agent of **$9,600.00**.
7. Maximum closing costs **$6,179.57** which excludes: third party short sale negotiation fees, third party short sale processing fees, escrow pad, pest inspections, home warranties, and water, sewer or utility fees.
8. Send separate wires for each loan if there are multiple loans to Green Tree.
9. Parties other than Green Tree must absorb (pay) any additional unapproved closing costs.

Any funds in your escrow account will be applied to your remaining loan balance. Upon receipt and verification of good funds, Green Tree will release the deed of trust/mortgage and the Note will be settled in full.

*This offer is expressly conditioned upon Green Tree's receipt of the funds by 2/11/2015.*

If this offer is based upon a cash settlement, please assure good funds are received by Green Tree by 2/11/2015. You may use the wiring instructions referenced below to send your settlement funds.

If this offer is conditioned upon the sale or refinance of the collateral securing the above-referenced account, Green Tree must receive all available funds from the sale or the closing of the new loan not to exceed the full payoff amount of the existing loan. You have represented to Green Tree that there are no additional funds available from the sale or refinance of the property and that you shall receive no funds, either directly or indirectly, from the sale or the closing of the new loan. If any additional funds become available, you must instruct the title company to disburse the funds to Green Tree.

---

[1] BECAUSE OF INTEREST, LATE CHARGES, AND OTHER CHARGES THAT MAY VARY FROM DAY TO DAY, THE AMOUNT DUE ON THE DAY YOU PAY MAY BE GREATER. HENCE, IF YOU PAY THE AMOUNT SHOWN ABOVE, AN ADJUSTMENT MAY BE NECESSARY AFTER WE RECEIVE YOUR CHECK, IN WHICH EVENT WE WILL INFORM YOU BEFORE DEPOSITING THE CHECK FOR COLLECTION. FOR FURTHER INFORMATION, CONTACT CUSTOMER SERVICE AT THE ABOVE-REFERENCED ADDRESS OR TOLL FREE NUMBER.

[2] Green Tree Servicing LLC and related entities, including, for certain accounts, in Pennsylvania, Green Tree Consumer Discount Company.

FNMA Pre-Foreclosure Sale Approval Letter - 1st Lien Loss Mit Bnk Acct 12/30/2010        LTR-1015(GT206)

A copy of the final HUD-1 or settlement statement, Short Sale Affidavit and tracking information must be faxed to me at the time of closing to 1-855-854-5146.[3]

On the date of closing, please direct the title company to remit the above-referenced amount by wire transfer using the following instructions:

Wiring Instructions:

| | |
|---|---|
| ABA: | 026009593 |
| Account: | 1257813511 |
| Account Name: | Green Tree Servicing LLC |
| Bank Name: | Bank of America |
| Bank Address: | 150 Broadway Avenue |
| Bank City: | New York |
| Bank State: | NY |
| Bank Zip: | 10038 |

Account #: 82437787
Please include the above-referenced account number with your payment.

After we receive your settlement amount, we will consider your loan paid in full. We will report your loan to the major consumer reporting agencies as "[a]ccount paid in full for less than the full balance."[4] In addition, we are required by law to report the amount of the debt that is forgiven to the Internal Revenue Service (IRS).

Grantee (purchaser) herein is prohibited from conveying captioned property for any sales price for a period of 30 days from the date of this deed. After this 30-day period, grantee is further prohibited from conveying the property for a sales price greater than $192,000.00 until 90 days from the date of this deed. These restrictions shall run with the land and are not personal to the grantee.

If you have any questions, please call me at 1-877-816-9125. Thank you for your assistance.

Sincerely,

Joel Santiago
Green Tree
1-800-643-0202
Monday - Friday, 7:00 a.m. - 8:00 p.m. Central Time or on Saturday, 7:00 a.m. - 1:00 p.m. Central Time

Enclosures: Short Sale Affidavit

cc: via facsimile

This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

---

[3] Green Tree's policy prohibits it from providing any instructions to settlement agents or the customer regarding the completion of the HUD-1.
[4] This description may vary by consumer reporting agency.

FNMA Pre-Foreclosure Sale Approval Letter - 1st Lien Loss Mit Bnk Acct 12/30/2010        LTR-1015(GT206)

# INSTRUCTIONS

## Short Sale Affidavit

The borrower, purchaser, and all parties involved in the transaction must sign and date a Short Sale Affidavit (Form 191) at the time of the closing confirming that the transaction is an arm's-length transaction with all proceeds (net of allowable transaction costs as described in Servicing Guide Announcement SVC-2012-19: Standard Short Sale/HAFA II and Deed-in-Lieu of Foreclosure Requirements) applied to the mortgage loan payoff in full satisfaction of the entire first-lien mortgage debt. An arm's-length transaction is a transaction between parties who are unrelated and unaffiliated by family, marriage, or commercial enterprise. The servicer may allow the borrower, purchaser, and all parties involved to sign individually on separate copies of the short sale affidavit. In addition, the servicer must retain the original signed short sale affidavit(s) in the mortgage loan servicing file.

Instructions page



# SHORT SALE AFFIDAVIT

| | |
|---|---|
| **Servicer:** | **Servicer Loan Number:** |
| **Address of Property:** | |
| **Date of Purchase Contract:**  ___/___/___ | **Investor:** |
| **Seller:** | **Buyer:** |
| **Seller:** | **Buyer:** |
| **Seller's Agent/Listing Agent:** | **Buyer's Agent:** |
| **Escrow Closing Agent:** | **Transaction Facilitator (if applicable):** |

This Short Sale Affidavit ("Affidavit") is given by the Seller(s), Buyer(s), Agent(s), and Facilitator to the Servicer and the Investor of the mortgage loan secured by the Property ("Mortgage") in consideration for the mutual and respective benefits to be derived from the short sale of the Property.

NOW, THEREFORE, the Seller(s), Buyer(s), Agent(s), and Facilitator do hereby represent, warrant and agree under the pains and penalties of perjury, to the best of each signatory's knowledge and belief, as follows:

(a) The sale of the Property is an "arm's length" transaction, between Seller(s) and Buyer(s) who are unrelated and unaffiliated by family, marriage, or commercial enterprise;

(b) There are no agreements, understandings or contracts between the Seller(s) and Buyer(s) that the Seller(s) will remain in the Property as tenants or later obtain title or ownership of the Property, except that the Sellers(s) are permitted to remain as tenants in the Property for a short term, as is common and customary in the market but no longer than ninety (90) days, in order to facilitate relocation;

(c) Neither the Sellers(s) nor the Buyer(s) will receive any funds or commissions from the sale of the Property except that the Seller(s) may receive a payment if it is offered by the Servicer, approved by the Investor and, if the payment is made at closing of the short sale of the Property, reflected on the HUD-1 Settlement Statement;

(d) The Seller's Listing Agent has presented all offers for the purchase of the Property to the Borrower and no offers have been held, concealed or delayed due to action or inaction by any Agent.[1]

(e) There are no agreements, understandings or contracts relating to the current sale or subsequent sale of the Property that have not been disclosed to the Servicer;

---

[1] As of August 1, 2014, this attestation is a mandatory requirement as stated in SVC-2014-09: Updates to Short Sale and Mortgage Release™

Fannie Mae Form 191                    Page 1 of 3                    May 2014

(f) All amounts to be paid to any person or entity, including holders of other liens on the Property, in connection with the short sale have been disclosed to and approved by the Servicer and will be reflected on the HUD-1 Settlement Statement;

(g) Each signatory understands, agrees and intends that the Servicer and the Investor are relying upon the statements made in this Affidavit as consideration for the reduction of the payoff amount of the Mortgage and agreement to the sale of the Property;

(h) A signatory who makes a negligent or intentional misrepresentation agrees to indemnify the Servicer and the Investor for any and all loss resulting from the misrepresentation including, but not limited to, repayment of the amount of the reduced payoff of the Mortgage;

(i) This Affidavit and all representations, warranties and statements made herein will survive the closing of the short sale transaction; and

(j) Each signatory understands that a misrepresentation may subject the person making the misrepresentation to civil and/or criminal liability.

IN WITNESS WHEREOF, I have subscribed my name this ____ day of _____, 20____.

(Seller's Signature) By: _____

IN WITNESS WHEREOF, I have subscribed my name this ____ day of _____, 20____.

(Seller's Signature) By: _____

IN WITNESS WHEREOF, I have subscribed my name this ____ day of _____, 20____.

(Buyer's Signature) By: _____

IN WITNESS WHEREOF, I have subscribed my name this ____ day of _____, 20____.

(Buyer's Signature) By: _____

IN WITNESS WHEREOF, I have subscribed my name this ____ day of _____, 20____.

(Seller's Agent/Listing Agent's Signature) By: _____

IN WITNESS WHEREOF, I have subscribed my name this ____ day of _____, 20____.

(Escrow Closing Agent's Signature) By: _____

IN WITNESS WHEREOF, I have subscribed my name this ____ day of _____, 20____.

(Buyer's Agent's Signature) By: _____

IN WITNESS WHEREOF, I have subscribed my name this _____ day of _____, 20____.

(Transaction Facilitator's Signature (if applicable)) By: _____

Fannie Mae Form 191                    Page 3 of 3                    May 2014

# green tree

*Please be advised that Green Tree requires the Final Certified or Executed HUD **12 hours** prior to the closing.*

***If the Final HUD is not received **prior to closing** of the Short Sale funds could be subject to being sent back.****

**Please follow these instructions to avoid having the Short Sale proceeds sent back:**

A copy of the Final HUD must be emailed to: GT.FINAL.HUD@GT-CS.COM within 12 hours of closing the Short Sale. CREATE A COVER SHEET AND PUT: LOAN NUMBER, SELLERS LAST NAME AND "JOEL SANTIAGO".

**Approved Closing Cost On Seller Side:**
Approved Closing Cost by Fannie Mae, do not go over the numbers listed below or the HUD1 will be rejected; final figures, non-negotiable.

## PARTIES OTHER THAN GREEN TREE MUST ABSORB (PAY) ANY ADDITIONAL UNAPPROVED CLOSING COSTS.

Buyers Closing Cost: $00.00
Property Taxes: $3,341.12 ($499.00 CITY, $92.12 COUNTY, $450.00 WINTER TAX, $2300.00 SUMEER TAX)
Transfer Tax Doc Stamps: $1,376.00 ($176.00 CITY, $1200.00 STATE)
Seller Attorney Closing Escrow Fee: $500.00
Title Policy Insurance: $937.45
Recording Fee: $00.00
Relocation Incentive: $00.00
Other Seller Closing Cost: $25.00 WIRE

Joel Santiago
Green Tree Closer
Final HUD Fax: 1(855) 854-5146
Phone: 877-816-9125 ext32111
Fax: (877) 612-2422

Hello,

Please see instructions below and ALL 9 pages

1. Please pull title Right Away to ensure no last minute issue come up at time of closing.
2. If Approved get 2nd lien Approval, start escalating to get that approval.
3. Please make sure ALL, HOA, Judgments, other Liens are resolved before closing.
4. Please see Approved closing fee, these are the only fees that investor has approved to pay
5. Contact all parties, to close on approved date, extensions are NOT guaranteed
6. Make sure we see your final-HUD 2 days before closing
7. Contact us if the buyer walked, this approval is only good for one buyer!
8. Please Make sure we are updated weekly on the status of your closing
9. Please email me the title company closing agent contact information
10. Please contact me at 877-816-9125 EXT 32111 or Email me at Gt.final.hud@gt-cs.com, please make sure the loan number and my name are in the subject line, if not I will not receive it

The Final Certified and Stamped HUD, Completed/Fully Executed Short Sale Affidavit and Wire confirmation need to be sent to me 2 hours after closing in conducted. **Please also be advised that if the title company sends a wire to Green Tree and we have to send it back due to errors on their end, there will be a $50 error fee that will be charged by Green Tree due to the cost of having to send the wire back.**



# FIRST TENNESSEE | FIRST HORIZON

January 2, 2015

To: Susan Brown/Jenny Eakin

RE: Susan Brown
Account Number: 1019
5832 Rustic Lane
Ypsilanti, MI 48197

Please accept this letter as confirmation to finalize and close Short Sale on the above property. First Tennessee Bank National Association ("First Tennessee Bank" or "Bank") will receive certain funds in exchange for the full release of Bank's Trust Deed. The conditions pursuant to which Bank will agree to do so are as follows:

- First Tennessee Bank must receive funds of no less than **$6,000.00** at closing.
- Contract amount **$141,900.00**; Closing costs **$14,972.71**; Buyer Name(s) **Sarah Prince.**
- The Seller is to receive funds in the amount of **$0.00**.
- A copy of the final HUD statement must be emailed to First Tennessee Bank **within 48 hours prior to closing.**
- Sales commission shall **not exceed 6%.**
- First Tennessee Bank agrees not to seek the deficiency balance and will consider the account as settled.
- Seller(s) (**Susan Brown**) must sign below agreeing to these terms, and **a signed copy of this letter as well as a signed final HUD statement** must accompany certified funds sent to Bank.

By delivery of funds in the above stated amount, the title company certifies compliance with the above stated conditions.

This offer expires **April 2, 2015**, if Bank does not receive the appropriate funds made payable to First Tennessee Bank. Please remit funds to:

**First Tennessee Bank
Attn: Foreclosure Department—Christine Clark
6522 Chapman Highway, Suite 110
Knoxville, TN 37920**

*This letter is in response to your request. Nothing contained in this letter shall be construed or interpreted as attempting any act to collect, recover or offset the discharged debt against the Debtor personally. This settlement is entered into solely in lieu of the Creditor exercising its in rem rights against the property as allowed under applicable law.*

Sincerely,

Christine Clark
Foreclosure Specialist
First Tennessee Bank
800-354-4538 X 24011
CMCLARK@FTB.COM

X_____
Borrower's Signature/Date

X_____
Co-Borrower's Signature/Date

To notify us of an error or request information about your account, please use the following address. Please include your name, your account number or other information that will help us identify your account, the error that you believe occurred, or the information requested. First Tennessee Bank, ATTN: Customer Solutions, P. O. Box 15003, Knoxville, TN 37901-5003

1

# A. Settlement Statement

U.S. Department of Housing and Urban Development

Form Approved OMB No. 2502-0265

| B. Type of Loan | | | | | | |
|---|---|---|---|---|---|---|
| 1. ☐ FHA | 2. ☐ FmHA | 3. ☒ Conv. Unins. | 6. File Number: 55299-CTA | 7. Loan Number: | 8. Mortgage Insurance Case Number: | |
| 4. ☐ VA | 5. ☐ Conv. Ins | 6. ☐ None (Cash). | | | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts Paid to and by the settlement agent are shown. Item marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrower: | E. Name and Address of Seller: | F. Name and Address of Lender: |
|---|---|---|
| Sarah Prince<br><br>2716 Bellwood Avenue<br>Ann Arbor, Michigan 48104 | Susan G. Brown<br><br>5832 Rustic Lane<br>Ypsilanti, Michigan 48197 | Bank of Ann Arbor |

| G. Property Location: | H. Settlement Agent: | |
|---|---|---|
| 5832 Rustic Lane, Ypsilanti, Michigan 48197<br>COUNTY: Washtenaw | 1st Choice Title Agency, LLC | |
| | Place of Settlement: | I. Settlement Date: March 31, 2015<br>Disbursement Date: |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | 160,000.00 | 401. Contract sales price | 160,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 7,088.40 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes      to | | 406. City/town taxes      to | |
| 107. County taxes      to | | 407. County taxes      to | |
| 108. Assessments      to | | 408. Assessments      to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 167,088.40 | **420. GROSS AMOUNT DUE TO SELLER** | 160,000.00 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instruction) | |
| 202. Principal amount of new loan(s) | 141,900.00 | 502. Settlement charges to seller (line 1400) | 15,188.45 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| | | GreenTree | 138,220.43 |
| 205. | | 505. Payoff of second mortgage loan | |
| | | First Tennessee | 6,000.00 |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes   01/01/2015 to 03/31/2015 | 499.00 | 510. City/town taxes   01/01/2015 to 03/31/2015 | 499.00 |
| 211. County taxes   01/01/2015 to 03/31/2015 | 92.12 | 511. County taxes   01/01/2015 to 03/31/2015 | 92.12 |
| 212. Assessments      to | | 512. Assessments      to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 142,491.12 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 160,000.00 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER** | | **600. CASH AT SETTLEMENT TO/FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 167,088.40 | 601. Gross amount due to seller (line 420) | 160,000.00 |
| 302. Less amount paid by/for borrower (line 220) | 142,491.12 | 602. Less reduction amount due seller (line 520) | 160,000.00 |
| **303. CASH   DUE FROM   BORROWER** | 24,597.28 | **603. CASH   DUE TO   SELLER** | |

REV.HUD.1(3/86)

JENNYF - 02/05/2015 3:05:30 PM
55299-CTA

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
## SETTLEMENT STATEMENT  PAGE 2

| L. SETTLEMENT CHARGES: | | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $ 160,000.00 @ 6.00 % = 9,600.00 | | | | | |
| Division of Commission (line 700) as follows: | | | | | |
| 701. Listing Agent | $ | 5,600.00 to | Dunlap & Associates | | |
| 702. Selling Agent | $ | 4,000.00 to | Premier Choice Realty | | |
| 703. Commission paid at Settlement | | | | | 9,600.00 |
| 704. | | to | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | | | |
| 801. Loan Origination Fee | % of | 141,900.00 to | | | |
| 802. Loan Discount | % of | 141,900.00 to | | | |
| 803. Appraisal Fee | | to | | | |
| 804. Credit Report | | to | | | |
| 805. | | to | | | |
| 806. | | to | | | |
| 807. | | to | | | |
| 808. | | to | | | |
| 809. | | to | | | |
| 810. | | to | | | |
| 811. | | to | | | |
| 812. | | to | | | |
| 813. | | to | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | | |
| 901. Interest from March 31, 2015 to | | Days @ $ | /day | | |
| 902. Mortgage Insurance Premium for | | to | | | |
| 903. Hazard Insurance Premium for | | to | | | |
| 904. | | to | | | |
| 905. | | to | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | | | |
| 1001. Hazard insurance | | mo.@ $ | /mo. | | |
| 1002. Mortgage insurance | | mo.@ $ | /mo. | | |
| 1003. City property taxes | | mo.@ $ | /mo. | | |
| 1004. County property taxes | | mo.@ $ | /mo. | | |
| 1005. Annual assessments | | mo.@ $ | /mo. | | |
| 1006. | | mo.@ $ | /mo. | | |
| 1007. | | mo.@ $ | /mo. | | |
| 1008. | | to | | | |
| **1100. TITLE CHARGES** | | | | | |
| 1101. Settlement or closing fee | | 1,035.00 to | 1st Choice Title Agency, LLC | 535.00 | 500.00 |
| 1102. | | to | | | |
| 1103. Owner's title insurance | | 937.45 to | 1st Choice Title Agency, LLC | | 937.45 |
| 1104. Lender's title insurance | | 437.40 to | 1st Choice Title Agency, LLC | 437.40 | |
| 1105. Record Handling Fee | | 30.00 to | ASKServices | 30.00 | |
| 1106. | | to | | | |
| 1107. Wire Fee | | 25.00 to | 1st Choice Title Agency, LLC | | 25.00 |
| (includes above items No: | | ) | | | |
| 1108. | | to | | | |
| (includes above items No: | | ) | | | |
| 1109. Lender's coverage | 141,900.00 @ 437.40 | | | | |
| 1110. Owner's coverage | 160,000.00 @ 937.45 | | | | |
| 1111. | | to | | | |
| 1112. | | to | | | |
| 1113. | | to | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | | |
| 1201. Recording fees: Deed $ 15.00 ; Mortgage $ 71.00 ; Release $ | | | | 86.00 | |
| 1202. City/County tax/stamps: Deed $ 176.00 ; Mortgage $ | | | | | 176.00 |
| 1203. State tax/stamps: Deed $ 1,200.00 ; Mortgage $ | | | | | 1,200.00 |
| 1204. | | to | | | |
| 1205. | | to | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | | |
| 1301. | | to | | | |
| 1302. | | to | | | |
| 1303. Carve Out Fee | | 6,000.00 to | Douglas Ellmann Chapter 7 Bankrupcty Trustee | 6,000.00 | |
| 1304. 2014 Winter Taxes | | 450.00 to | Augusta Township Treasurer | | 450.00 |
| 1305. 2014 Summer Taxes | | 2,300.00 to | Augusta Township Treasurer | | 2,300.00 |
| 1306. | | to | | | |
| 1307. | | to | | | |
| 1308. | | to | | | |
| **1400. TOTAL SETTLEMENT CHARGES** (enter on lines 103, Section J and 502, Section K) | | | | 7,088.40 | 15,188.45 |

CERTIFICATION I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Sarah Prince                                                                 Susan G. Brown

Borrowers                                                                    Sellers

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with this statement.

Settlement Agent                                              March 31, 2015                              Date

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 19. U.S. Code Section 1001 and Section 1010.

REV HUD-1 (3/86)