UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In the matter of:

    Susan G. Brown,                 Case No. 14-48421-MBM
                                     Chapter 7
                 Debtor.   /        Hon. Marci B. McIvor

**OPINION DENYING
DEBTOR'S MOTION FOR ORDER STAYING DISTRIBUTION
PENDING APPEAL**

On May 15, 2014, Debtor, Susan G. Brown, filed a voluntary petition under Chapter 7 of the Bankruptcy Code. On Schedule A (Schedule of Real Property), Debtor listed a residence located at 5832 Rustic Lane, Ypsilanti, Michigan (hereinafter referred to as "the Ypsilanti property" or "the property"). The Debtor listed the value of the property as $170,000.00. The Debtor also stated the amount of secured claims against the property as $219,000.00. On Schedule C (Property Claimed as Exempt), Debtor listed no exemption in the property. On Schedule D (Creditors Holding Secured Claims), Debtor listed a mortgage with Everhome Mortgage in the amount of $182,000.00 and a second mortgage with "First Tennessee" in the amount of $37,000.00. The first mortgage is serviced by Green Tree Servicing LLC. On May 15, 2015, Debtor also filed her "Statement of Intent", the pleading which requires debtors to state whether they intend to reaffirm, redeem, or surrender, any collateral subject to a secured claim. Debtor's "Statement of Intent" stated that she intended to surrender the Ypsilanti property.

On February 5, 2015, the Chapter 7 Trustee filed an Application for Authority to sell the Ypsilanti property. (Docket # 26). The Trustee's Application also sought authority to evict Debtor and to distribute the proceeds of the sale. The Trustee stated that: 1) a purchaser had

signed a purchase agreement to purchase the Ypsilanti property, and 2) the first mortgagee had

agreed to a "short sale" by which the first mortgagee would accept $138,220.43 in full

satisfaction of the balance of $189,020.74 owed on the first mortgage. The first mortgagee also

agreed to a distribution of the sale proceeds (based on a sale price of $160,000) to the second

mortgagee in the amount of $6,000.00. The remaining proceeds, after the mortgage payments,

would go to the real estate broker, the closing costs, and the bankruptcy estate for distribution to

Debtor's creditors. (See Exhibits attached to Docket # 26).

On February 24, 2015, Debtor filed a one sentence objection to the Trustee's Application

for Authority to sell the Ypsilanti property. (See Docket # 29).

On March 1, 2015, Debtor filed an amended Schedule C. On her amended Schedule C,

Debtor claimed an exemption in the Ypsilanti property under both 11 U.S.C. § 522(d)(1) and 11

U.S.C. § 522(d)(5). Debtor valued her exemption under 11 U.S.C. § 522(d)(1) at $11,475.00;

Debtor valued her exemption under 11 U.S.C. § 522(d)(5) at $11,675.00. Debtor states the

current value of the property as $12,000.[1] Debtor did not amend Schedule A.

On March 3, 2015, this Court held a hearing on the Trustee's Application for Authority

to Sell the Ypsilanti property. At the hearing, the Trustee requested the relief sought in his

Application. In addition, the Trustee requested that the Court disallow Debtor's exemption in the

Ypsilanti property, as claimed on Amended Schedule C. At the conclusion of the hearing, the

Court ruled in favor of the Trustee and granted all relief sought by the Trustee.

---

[1]On March 10, 2015, this Court entered an Order Striking Debtor's Amended Schedule C due to a
procedural deficiency. On March 23, 2015, Debtor filed an Amended Schedule C for the sole purpose of
curing the defect in the original filing. Debtor acknowledges in the Amended Schedule C filed on March
23, 2015, that the Bankruptcy Court has disallowed Debtor's exemption of her interest in the Ypsilanti
property in its Order dated March 3, 2015.

The Court memorialized its ruling in an Order entered on March 3, 2015.  That Order reads in relevant part:

> IT IS FURTHER ORDERED that the Trustee's oral objection to the Debtor's Amended Exemptions filed on March 1, 2015 is granted, and the exemptions taken by the debtor in "5832 Rustic Lane, Ypsilanti, Michigan and all related rights" are denied for the reasons stated on the record.

On March 16, 2015, Debtor filed a Notice of Appeal to the United States District Court for the Eastern District of Michigan.  On March 23, 2015, Debtor filed a Motion for Order Staying Distribution Pending Appeal ("Motion for Stay").  In her Motion for Stay, Debtor states that she is only appealing the portion of this Court's March 3, 2015 Order which denied her claim of exemption in the Ypsilanti property.  The relief sought by the Debtor is that the Trustee be stayed from distributing the proceeds of the sale of the Ypsilanti property until her appeal is resolved.

On March 24, 2015, the Chapter 7 Trustee filed an Objection to Debtor's Motion for Stay.  On March 25, 2015, Debtor filed a Brief in Response to the Trustee's Objection to her Motion for Stay.  On March 30, 2015, the Trustee filed a supplemental brief supporting his objections to Debtor's Motion for Stay.

The Court has reviewed Debtor's Motion for Stay, the Trustee's Objection and supplemental brief, and Debtor's Response to the Trustee's Objection, and concludes that a hearing is not necessary.  Debtor's Motion for Stay is DENIED for the reasons set forth below.

Fed. R. Bankr. P. 8007 controls motions for stay pending appeal.  That rule provides that "ordinarily, a party must move first in the bankruptcy court for a stay pending appeal."  The factors to be considered in determining whether to grant a stay pending an appeal are set forth in

*Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153-154

(6th Cir. 1991). The court stated:

> In determining whether a stay should be granted under Fed.R.Civ.P. 8(a), we consider the same four factors that are traditionally considered in evaluating the granting of a preliminary injunction. These well-known factors are: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together.

The party seeking the stay has the burden of establishing by a preponderance of the evidence that

it is entitled to the stay. *See Serv. Emps. Int'l Union Local 1 v. Husted,* 698 F.3d 341, 343 (6th

Cir. 2012); *In re Holstine,* 458 B.R. 392 (Bankr. E.D. Mich. 2011).

Based on the factors set forth in *Griepentrog,* Debtor must first demonstrate a likelihood

that she will prevail on the merits of her appeal. In her appeal, Debtor is not challenging this

Court's Order Authorizing the Sale of Debtor's real property, rather Debtor is challenging the

portion of this Court's Order which disallowed her amended exemption in which she attempted

to exempt an interest in the Ypsilanti property. It is Debtor's contention that the Trustee should

not be able to distribute the proceeds of the sale in the manner set forth in the Trustee's

Application for Authority to Sell the Ypsilanti property. The Debtor argues that the proceeds

should not be distributed pending resolution of her appeal because if she is successful on appeal,

a portion of the proceeds would have to be used to pay the exemptions claimed on her Amended

Schedule C. This Court finds that there is virtually no likelihood that Debtor will prevail on her

argument that she may claim an exemption in the Ypsilanti property.

When a debtor files for bankruptcy, all of debtor's legal and equitable interest in

property as of the commencement of the case, become property of the bankruptcy estate. 11

4

U.S.C. §541(a)(1). While all of a Debtor's property comes into the bankruptcy estate, a debtor may exempt certain types of property pursuant to either state law exemptions or federal exemptions as set forth in 11 U.S.C. § 522(d). Exemptions are determined as of the bankruptcy case filing date. *Wolf v. Salven (In re Wolf)*, 248 B.R. 365 (B.A.P. 9th Cir. 2000) A debtor may not claim exemptions which did not exist as of the commencement of the case. *In re Hyman,* 967 F.2d 1316 (9th Cir. 1992). In addition, property subject to secured liens in excess of the value of the property may not be exempted., 11 U.S.C. § 522(c)(2). Exemptions are subordinate to a secured creditor's lien on real property. 11 U.S.C. § 522(c)(2); *Baldridge v. Ellmann (In re Baldridge)*, 2013 WL 1759365 *2 (E.D. Mich.), aff'd, 553 Fed. Appx. 598 (6th Cir. 2914)("because Debtors' exemptions are subordinate to [the mortgagees'] consensual secured liens, Debtors can only claim an exemption if there is equity in the Property. As the sale proceeds are insufficient to satisfy both mortgages, there is no equity for debtors to exempt"); *In re Bunn-Rodemann*, 491 B.R. 132 (E.D. Cal. 2013) (debtor cannot claim an exemption in the value of the property subject to creditor's consensual lien). Consequently, if the amount of the secured debt exceeds the fair market value of the property such that there is no equity, the exemption is lost. *In re Neal*, 424 B.R. 235, 236 (Bankr. E.D. Mich. 2010) ("the debtors are only entitled to an exemption to the extent there is equity in the property.") As the Ninth Circuit Bankruptcy Appellate Panel explained:

> Section 522(d) exempts the debtor's interest in property - not the property itself. The value that can be exempted is the unencumbered portion. Consequently, the amount of exemption available to a debtor is the lesser of either the equity in the property or the maximum amount of the applicable exemption.

*Drummond v. Urban (In re Urban),* 375 B.R. 882, 885 (B.A.P. 9th Cir. 2007).

5

In the instant case, Debtor has attempted to exempt her property under §§ 522(d)(1) and (d)(5). It is undisputed that the amount owed on the secured consensual liens on the property exceeds the value of the property, both on the date Debtor filed for bankruptcy and on the date this Court entered its Order authorizing the sale. Therefore, there is no equity for Debtor to exempt. Debtor argues however, that the first mortgagee's agreement to accept less than full payment on its mortgage *creates* equity that must be paid to Debtor as an exemption.

Debtor's argument that she may claim a homestead exemption in proceeds generated by a first mortgagee's agreement to accept less than full payment on its mortgage has been squarely rejected by Sixth Circuit Court of Appeals in the case of *Baldridge v. Ellmann (In re Baldridge)*, 553 Fed. Appx. 598 (6th Cir. 2014).[2] In that case, the married debtors filed a joint chapter 7 bankruptcy petition. Their schedules disclosed that their primary residence was encumbered by two mortgages whose total balance exceeded the value of the property. Thus, the debtors claimed no exemption in the property at the time the petition was filed. Subsequently, the mortgage lenders obtained a lift of stay to foreclose on the property. Rather than foreclose,

---

[2]This Court recognizes that *Baldridge* is an unpublished case and does not constitute binding precedent. However, unpublished decisions from the Sixth Circuit constitute persuasive authority,

> especially where there are not published decisions which will serve as well. See *In re Braddy*, 195 B.R. 365, 370-71 (Bankr. E.D. Mich. 1996)("although the [Sixth Circuit] Court of Appeals does recognize that its unpublished decisions are not binding precedent in the same sense as published decisions, the [Sixth Circuit] does cite an unpublished decision when there is no published decision on point and the reasoning of the unpublished decision is found persuasive. [T]he lower courts join the Sixth Circuit in applying a general principle that although not binding, unreported Sixth Circuit decisions can be cited if persuasive.")

*Belfance v. Black River Petroleum (In re Hess)*, 209 B.R 79, 82 n.3 (B.A.P. 6th Cir. 1997). *See also Hood v. Keller*, 229 Fed. Appx. 393, 398 n.5 (6th Cir. 2007); *Storey v. Pees (In re Storey)*, 392 B.R. 266, 272 (B.A.P. 6th Cir. 2008).

6

however, the lenders located a buyer and reached an agreement with the trustee whereby the sale

proceeds would be used to pay the first mortgage in full, broker fees, closing costs, and $28,000

to the bankruptcy estate.  The remaining balance of the sale proceeds were paid to the second

mortgage holder. The sale proceeds paid to the second mortgagee were more than $200,000 short

of the amount owed on the second mortgage.

The debtors objected to the sale and asserted that they were entitled to exempt a portion

of the sale proceeds.  The bankruptcy court held that the debtors' exemptions were subordinate

to  both mortgage liens and that because the second mortgage was not fully paid, there was no

equity in the property for the debtors to exempt. Debtors appealed the bankruptcy court's

decision to the district court, and the district court affirmed, stating:

> 'Property of the estate' is comprised of 'all legal or equitable interests of the
> debtor in property *as of the time of the commencement of the case."* 11 U.S.C.
> 541(a)(1)(emphasis added). The $28,000 carve-out therefore, cannot constitute
> 'property of the estate' because it was generated as the result of the Trustee's
> efforts in selling the Property – after Debtors filed their bankruptcy petition.  The
> court  reiterates that, because Debtors' exemptions are subordinate to [the
> lenders'] consensual secured liens, Debtors can only claim an exemption if there
> is equity in the Property.  As the sale proceeds are insufficient to satisfy both
> mortgages, there is no equity for the Debtors to exempt. **The $28,000 carve-out
> does not transform into home equity simply because it is paid to the estate**.
> [The second mortgage lender] was entitled to all of the sale proceeds remaining
> after the first mortgage was satisfied.  The estate received the $28,000 carve-out
> only upon the [second mortgage lender's] agreement to pay the estate out of
> proceeds to which the [second mortgage lender] was owed; were it not for [the
> second mortgage lender] agreeing to pay the carve-out, the bankruptcy estate
> would have received nothing.  Debtors may not now reap a benefit they could not
> have otherwise obtained just because [the second mortgage lender] voluntarily
> agreed to pay the estate from proceeds that [it] was rightfully owed.

*Baldridge v. Ellmann (n re Baldridge)*, 2013 WL 1759365 *2 (E.D. Mich.)(emphasis in bold

added).

The Sixth Circuit affirmed the decision of the district court. The appellate court stated:

7

irrespective of the reason for which the [second mortgage lender] agreed to remit the $28,000 portion of its recovery to the Trustee, it is undisputed that the net sale proceeds payable to [the second mortgage lender] after satisfaction of the debt owed to [the first mortgage lender] left a deficiency of over $200,000 on the balance owed to [the second mortgage lender]. Hence, inasmuch as the sale proceeds were insufficient to satisfy the prior obligations owed to the secured creditors, there was no residual equity in the property to which debtors' exemptions could attach.

*Baldridge v. Ellmann (In re Baldridge)*, 553 Fed. Appx. 598, 599 (6th Cir.2014), *cert. den.* 135 S.Ct. 113 (2014).

The *Baldridge* case is factually on point with the case at bar and represents the Sixth Circuit's only discussion of this issue. As such, it is the most reliable predictor of how the Sixth Circuit Court of Appeals would rule in a published case which would be binding on this Court. Moreover, this Court finds the reasoning in *Baldridge* to be a straightforward analysis of well established bankruptcy principles. Given the Sixth Circuit's ruling that debtors have no equity to exempt if the balance owed to the mortgagees exceeds the value of the property, there is little likelihood that Debtor will prevail on her argument that she may claim a homestead exemption. *See also In re Bunn-Rodemann*, 491 B.R. 132 (Bankr. E.D.Ca. 2013)(in the context of a short sale, funds carved out for the estate belonged to the mortgagee and were not estate assets in which the debtor could claim an exemption).

In her Motion for Stay, Debtor ignores *Baldridge* and instead relies on three cases from other jurisdictions to support her argument that she might prevail on appeal. Having carefully read and reviewed those cases, this Court finds them unpersuasive or inapplicable to the facts of the instant case.

The first case relied upon by Debtor is *In re Wilson*, 494 B.R. 502 (C.D. Cal. 2013). In Wilson, an individual chapter 7 debtor disclosed that she owned two properties which were

encumbered by mortgages and that the amount owed on the mortgages exceeded the value of the properties. The debtor did not claim any exemption with respect to the properties. The trustee found purchasers for the properties and proceeded to negotiate a short sale of both properties. As part of the agreement between the Trustee and the mortgagees, the bankruptcy estate received $36,250. After the Trustee negotiated the agreement with the mortgagees, the debtor filed an amended exemption schedule seeking an exemption of $26,328. The trustee objected to the amended exemption asserting that the debtor could not claim an exemption that did not exist at the time the petition was filed. The court overruled the objection and held that the debtor was entitled to an exemption in the amount of $23,350.

Debtor argues that the existence of the *Wilson* decision is sufficient to demonstrate that there is some likelihood that she will prevail on the merits of her appeal. This court disagrees. The *Wilson* court construed the funds which the undersecured creditors agreed to pay to the estate as "property of the estate" which came into the estate post petition, and ruled that Debtor could claim a homestead exemption in the post petition property. That analysis misconstrues the bankruptcy code provisions regarding what constitutes property of the estate (which is determined on the date the petition is filed, pursuant to 11 U.S.C. § 541), the nature of a secured creditor's interest in properly perfected collateral (a secured creditor's claim is secured to the extent that the lien does not exceed the value of the property, pursuant to 11 U.S.C § 506(a)), and the definition of the debtor's right to assert a homestead exemption (any exemption is subordinate to payment in full of creditor's lien pursuant to 11 U.S.C. § 522 (c)(2)).

This Court is not aware of any case law (nor does the *Wilson* court cite any) for the proposition that a debtor is entitled to an exemption paid out of sale proceeds arising from the

9

sale of an undersecured creditor's collateral. The Court is similarly unaware of case law which would preclude an undersecured creditor from negotiating with the trustee for a sale in lieu of foreclosure. This is especially true where the sale will yield proceeds for the estate that would not otherwise be available. *See In re Bunn-Rodemann*, 491 B.R. 132 (E.D. Cal. 2013) . Such a sale is entirely consistent with the trustee's duties to the estate and does not come at the debtor's expense because the debtor had no equity to exempt on the date the case was filed.

This Court respectfully disagrees with the reasoning of the *Wilson* case. Because it is not binding on this Court and is inconsistent with the Sixth Circuit's holding in *Baldridge*, the Court finds that Wilson provides no support for Debtor's argument that there is some likelihood she will prevail on the merits of her appeal.

Debtor also cites *In re Mannone*, 512 B.R.148 (Bankr. E.D.N.Y. 2014) in support of her argument that there is some likelihood that she will prevail on the merits of her appeal. In Mannone, the chapter 7 debtor disclosed his residence on his bankruptcy schedules along with a mortgage that exceeded the value of the home. The debtor did not claim an exemption for the property on schedule C. The trustee negotiated a sale of the property whereby the sale price exceeded the existing lien by $20,000 and the net proceeds after payment of the lien were payable to the bankruptcy estate. The debtor then amended his exemptions asserting that he was entitled to the $20,000 as a homestead exemption. The trustee objected to the amended exemptions.

The *Mannone* court overruled the Trustee's objection. The court stated that while the debtor's "right to claim the homestead exemption, along with the dollar amount to be claimed, was fixed as of the Petition date. . . . the extent to which the Debtor is entitled to be paid on

account of his claimed homestead exemption is governed by the actual sale price." *Id.* at 154
(citation omitted). Since the actual sales price provided for full satisfaction of the secured
lender's claim (albeit, not by payment in full, but through an assumption by the purchaser), the
$20,000 paid to the estate after satisfaction of the secured creditor's claim was subject to the
debtor's exemption.

The *Mannone* case has no applicability to the facts of the instant case. In *Mannone*,
because the secured creditor's claim was satisfied in full, the court found that the purchase price
in excess of all properly perfected liens was subject to a debtor's homestead exemption.
*Mannone* does not help Debtor in the case instant case because this case involves a short sale–
the secured lenders are undersecured and are not being paid in full. There is simply no equity to
which Debtor's claimed exemption can attach.

Finally, Debtor cites *In re Payne*, 512 B.R. 421 (Bankr. E.D.N.Y. 2014). In that case, a
chapter 7 debtor (whose case was converted from a chapter 13) had a residence with two
mortgages and the value of the mortgages was greater than the value of the home. Debtor's
original schedule C did not seek an exemption for the home. Subsequently, the trustee found a
buyer willing to purchase the home subject to both mortgages and pay an additional $17,500 to
the estate. The trustee then sought approval from the court to sell the home and for an order
directing the debtor and his family to vacate. The debtor objected to the sale, asserting that the
property could not be sold subject to the liens while simultaneously ordering the debtor and his
family to vacate the premises. The debtor also amended his exemptions asserting that the
$17,500 was subject to his homestead exemption, thus the sale of the home, if approved, would
not benefit the estate. The first mortgagee also objected to the trustee's motion, arguing that the

11

trustee could not sell the real property without paying off the first mortgage because of the "due on sale" provision in the mortgage.

The *Payne* case presents an unusual set of facts. As the court states:

> The Trustee has not cited a case in which a chapter 7 trustee sold a residence owned by the debtor subject to all liens, claims and encumbrances, did not pay any liens against the property, and obtained what is essentially an order of eviction from a bankruptcy court.

*Payne*, 512 B.R. at 428.

The court in *Payne* concluded that the trustee's proposed sale of the property subject to all liens violated the statutory requirements for a bankruptcy sale under 11 U.S.C. § 363(f) and (h). The court also held that the debtor could not be evicted without some undefined amount of compensation. Because the court denied both the trustee's motion for sale and the trustee's request to evict the debtor, the court did not rule on whether the debtor could have claimed an exemption in any sale proceeds, nor did the court state an amount that the trustee would have had to pay the debtor to obtain an order of eviction.[3]

The *Payne* case does not support Debtor's argument that she is entitled to an exemption in the proceeds generated by the first mortgagee's agreement to accept less than full payment on its lien. In *Payne*, there were no sale proceeds so the court never ruled on whether the debtor could have exempted any amount. Furthermore, Debtor in the instant case is not appealing the sale and cannot therefore make any argument that her situation is analogous to that of the debtor in the *Payne* case.

---

[3]This Court disagrees with the *Payne* court's conclusion that a debtor is entitled to some amount of money as a precondition to a chapter 7 trustee obtaining an order of eviction. The facts in *Payne* are unusual and the Court's ruling that Debtor was entitled to "adequate protection" should be limited to the facts of that case.

This Court finds that none of the cases cited by Debtor support her argument that she has a significant likelihood of prevailing on the merits of her appeal. Therefore, Debtor fails to satisfy the first requirement for obtaining a stay pending appeal.

The second factor to consider in evaluating a motion for a stay pending appeal is the likelihood that Debtor will be irreparably harmed absent a stay. Generally, monetary damages do not give rise to irreparable injury. *Overstreet v Lexington-Fayette Urban Cty. Gov't.*, 305 F.3d 566 (6th Cir. 2002). Debtor's assertion that she is entitled to an exemption to be paid out of the proceeds of the sale of the Ypsilanti property is a claim for money. In the unlikely event that Debtor prevails on her appeal, to the extent it was determined that the Debtor could exempt any amount, that amount could be recovered from the parties to whom the money is paid by the Trustee. Therefore, Debtor will not suffer irreparable harm if her Motion for Stay is denied.

The third factor to be considered by the Court in determining whether a debtor is entitled to a stay pending appeal is the prospect that others will be harmed if the Court grants the stay. The court finds that both the bankruptcy estate and the second mortgagee, First Tennessee, may be harmed if the Court grants Debtor's Motion for Stay.

The Trustee's obligation to sell the Ypsilanti property arises out of his duties under 11 U.S.C. § 704(a)(1) and 11 U.S.C. § 704(a)(3). Section 704(a)(1) requires the Trustee to collect and reduce to money all property of the estate. Section 704(a)(3) requires the Trustee to ensure "that the debtor shall perform his intention as specified in section 521(a)(2)(B) of this title."[4] In

---

[4]One of a trustee's primary responsibilities in a chapter 7 case is "to collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest". 11 U.S.C. § 704(a)(1). "As an officer of the Court and as a representative of [the debtor's] creditors, the Trustee has a duty to realize the maximum return for the estate for further distribution to the

13

Debtor's Statement of Intent (Docket # 5), Debtor stated her intention to surrender the Ypsilanti

property. Had the Trustee taken no action, Debtor would have surrendered the Ypsilanti property

to the first mortgagee, Everhome Mortgage. Because the balance on the first mortgage exceeds

the value of the property, upon surrender, neither the second mortgagee nor any of Debtor's

other creditors would have received anything. Given Debtor's conviction that she is entitled to a

financial recovery from the sale of the Ypsilanti property, it is worth noting that had Debtor

surrendered her property prior to filing for bankruptcy, she also would not have recovered any

money. As noted above, under either state or federal law, a debtor is not entitled to any payment

from a secured creditor's collateral unless the value of the collateral exceeds the value of the

consensual liens on the property.

Instead of abandoning the Ypsilanti property, the Trustee was able to negotiate a short

sale with the first mortgagee, which generated a benefit to the second mortgagee and Debtor's

unsecured creditors. That agreement is voluntary and was presumably entered into by the first

mortgagee in an attempt to expedite the sale of the undersecured Ypsilanti property and avoid

---

Debtor's creditors. Although a Chapter 7 trustee is a fiduciary obligated to treat all parties fairly, his primary duty is to the estate's unsecured creditors." *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (In re Merrill Lynch & Co. Research Reports Sec. Litig.)*, 375 B.R. 719, 727 (S.D.N.Y.2007) *(quoting In re Balco Equities Ltd.*, 323 B.R. 85, 98 (Bankr.S.D.N.Y.2005)); *accord McCord v. Agard (In re Bean)*, 251 B.R. 196, 203 (E.D.N.Y.2000) aff'd 252 F.3d 113 (2d Cir.2001). "Indeed, underlying all of a chapter 7 trustee's actions, including decisions about sales of property of the estate, is the fiduciary duty to maximize distribution to creditors." *In re Ellis*, 2011 WL 61378, at *2 (Bankr.D.Idaho Jan. 7, 2011); *see Dye v. Brown (In re AFI Holding, Inc.)*, 530 F.3d 832, 844–845 (9th Cir.2008) *(citing U.S. Trustee v. Joseph (In re Joseph)*, 208 B.R. 55, 60 (B.A.P. 9th Cir. 1997)).

.

the expense of owning the property after Debtor's surrender of the property.[5]  If the Motion for Stay is granted, and the distribution of proceeds is delayed, the first mortgagee is under no obligation to adhere to the terms of its voluntary agreement.  If a stay on distribution of the proceeds is in place until Debtor's appeal is resolved, the first mortgagee could  argue that it is entitled to all the proceeds of the sale.  In other words, the price of a delay in distribution to the first mortgage may well be that no funds will be available to pay either the second mortgagee or Debtor's other creditors.   First Tennessee and the unsecured creditors have no right to money damages; the fact that they will receive a payment in this case derives solely from the first mortgagee's agreement to accept less than the full amount of its secured claim.  Consequently, there is a significant likelihood that First Tennessee and the other unsecured creditors will be harmed if there is no prompt distribution of the proceeds of the sale.

Lastly, the Court must demonstrate there is a public interest in granting the stay.  The Court finds that there is no public policy implications in granting or denying the stay and therefore this factor is inapplicable.

---

[5]The motive of undersecured mortgagees in negotiating a short sale is best described in *In re Bunn-Rodemann*, 491 B.R. 132 (E.D. Ca. 2013).  The court explained that mortgage creditors have realized:

> that a short-sale of the property securing the debt (by which the creditor agrees to take less than the full amount owed) is better than the creditor completing a non-judicial foreclosure sale and the creditor becoming the owner of the property. Once the creditor becomes the owner, it has to take on the responsibility of being an owner, including, (1) evicting the borrower/former owner, (2) managing the property as an asset of the creditor, (3) paying insurance, property taxes, and utilities, (4) employing people or third-party vendors to secure, repair, and maintain the property while it is being marketed, and (5) engaging a real estate broker to sell the property.

*Id.* at 135.

Debtor has failed to establish the conditions necessary for obtaining the stay pending appeal.  Debtor's Motion is DENIED.

Signed on April 01, 2015

                                    /s/ Marci B. McIvor
                              Marci B. McIvor
                              United States Bankruptcy Judge